LECATT *versus* SALLEE.

3p 115
132  143

THE QUESTION IN THIS CAUSE.

*In respect to the right of an attorney or counsellor, to make* new *contracts with the client, for compensation, after retainer.*

1. An agreement made by a client, with his counsel, after the latter has been employed in a particular business, by which the original contract is varied, and greater compensation is secured to the counsel, than may have been agreed upon, when first retained; is invalid, and cannot be enforced.

This was a bill in Chancery, filed in the Mobile Circuit Court, by Littleton Lecatt; the object of which was to enjoin a judgment obtained against him, by the defendant in error.

The bill stated, that on or about the seventeenth day of January, eighteen hundred and twenty-five, the complainant engaged the defendant to prosecute his claim to certain estates, to which he was entitled, by courtesy, in the city of Mobile. That, in consideration of the services to be performed, in and about the management of the suits incident to this engagement, he executed his promissory note to the defendant, for the sum of eight thousand dollars; which was accompanied by a writing, signed by Sallee, and delivered to the complainant, whereby the conditions upon which said note was given, were expressed; and, by which it appeared, that, in the event of an entire failure to recover, the note was to be cancelled: or paid in proportion to the recovery of part of the lots. That, afterwards the defend-

ant instituted suits for the recovery of the complainant's claims, in part of which he was successful, and in others, not—a portion of the suits remaining undetermined.

It was further shewn, that subsequently to this, the defendant instituted an action upon the note, and thereon obtained judgment, for the full amount of eight thousand dollars—under which, execution was then harrassing the complainant.

The complainant charged, that, at the time of obtaining said judgment, it was expressly agreed, between the parties, that the same should abide the conditions before entered into : and, that, in part liquidation of the note, he had paid the sum of six thousand seventy-five dollars; which was a much larger amount than, under the agreement, the defendant was entitled to; or, proportioned to the services rendered.    The bill prayed an account and relief, &c., and, upon it, an injunction was granted.

The answer of the defendant admitted the contract, as charged ; but, directly averred, that the conditional agreement had been cancelled, under the following circumstances; that, ascertaining that the complainant had compromised one of the suits, then being prosecuted by the defendant; and, had lost the proceeds of that compromise by gambling—informed him, that he would decline the prosecution of his, (complainant's,) suits, unless the latter would confess a judgment on the note; and convey a lot of land to the respondent, in part payment thereof: all which was done accordingly : that, said judgment was obtained, under an agreement, that an execution was to be levied, at any time that the defendant thought proper so to do.

To so much of the bill as alleged, that it was understood, that the judgment was to be subject to the conditions under which the note was given, there was a direct charge of its untruth. The answer contained further averments and explanations; but not material to the history of the cause, further than recited.

A decree, in the cause, was subsequently rendered, by the Chancellor below, in favor of the defendant, for three thousand and sixty-three dollars and seventy-five cents; and the complainant's bill dismissed.

Lecatt prosecuted his writ of error, to this court.

The case was argued by *Mr. Goldthwaite,* for the plaintiff in error; and, by *Mr. Sallee,* for the defendant.

HOPKINS, J.—The plaintiff in error filed the bill in this case, on the Chancery side of the Circuit Court of Mobile county, for an injunction and relief against a judgment at law, in favor of the defendant, and states, that in 1825, he employed the defendant, who was an attorney and counsellor at law, to institute and prosecute suits for several lots of land in the city of Mobile, to which the defendant had a claim. That, in consideration of the services to be rendered, by the defendant, the complainant gave him his note for eight thousand dollars, subject to conditions expressed in an agreement, signed by the defendant, and which was appended to the note; and that one of the conditions was, that if there should be no lot recovered, the note should be given up and cancelled. A copy of the agreement forms a part of

the bill, and shows that the note was to bear no interest during the pendency of the suits. The other material allegations are, that sometime after the note and agreement were made, a judgment was rendered against the complainant, in favor of the defendant, for the full amount of the note, upon an agreement between them, that the judgment should be subject to the same conditions to which the note was. That some of the suits had terminated in the success of the complainant, and others were undetermined.— That he had paid paid a larger sum upon the judgment than the value of the lots recovered, entitled the defendant to receive; but that he claimed the full amount of it, and had caused an execution to issue, to collect it.

The defendant admits the note was made upon the consideration, and that he executed the agreement stated in the bill, but he denies that the judgment was taken subject the conditions to which the note was. He alleges that the improvident sale, by the complainant, of a part of the property, and his waste of the proceeds induced him to inform the complainant that he would decline prosecuting the suits, unless the complainant would confess a judgment for the amount of the note, upon which an execution to obtain satisfaction might issue, whenever the defendant chose; and, also, convey to him one of the lots as security for the judgment, until the complainant could put him into possession, when the conveyance should become absolute, and operate as a payment on the judgment, to the amount of the appraised value of the lot.

To this new agreement, proposed by an attorney to his client, it is alleged in the answer, the latter as-

sented, and that the judgment was taken, subject to it, in February, 1826.

It does not appear that any of the suits had been determined, when an agreement was made that a judgment might be rendered upon the note. From the time of the commencement of the relation between the parties, the inference is, that none had been decided.

It is unnecessary to determine whether the judgment were taken on the agreement alleged in the bill, or upon that set up in the answer. If it were rendered upon either, the same question arises, which is presented also by the facts charged and admitted. That the note was given, subject to the conditions contained in the agreement, both parties affirm — That an unconditional judgment was taken, for the full amount of the note, twelve or thirteen months after the execution of it, and the employment of the defendant, as attorney, he admits. Both affirm it was rendered upon an agreement, but each differs from the other, in his statement of what the agreement was. That the defendant claims a right to the full amount of the judgment, the complainant alleges, and he admits.

Upon these facts, the question arises, can an attorney, during the connection between his client and himself, make, with his client, a binding contract to secure to himself greater compensation for his services than was agreed upon, when their relation commenced?

The question has never before been presented to this Court, but it has been often determined in England. There, it is a settled doctrine of equity, that an attorney cannot, while the business is unfinished,

in which he had been employed, receive any gift from his client, or bind his client in any mode, to make him greater compensation for his services than he would have a right to demand, if no contract should be made during the relation. If an attorney accept a gift from one thus connected with him, it may be recovered, in a Court of Chancery, by the donor or his creditors, should it be necessary for them to assert a right to it to satisfy their demands.

If a bond, or any other security for a greater compensation, be taken from a client, by his attorney, during their connection, it will, upon an application to a court of equity, be either set aside or allowed to stand only as security for the sum to which the attorney would have been entitled if no such security had been given. In some of the cases the prohibition comprehends all dealings between attornies and their clients; in others, it is confined to the particular business which was the inducement to form the relation, and an attorney is allowed to enter into contracts with his client upon any matter which is not the object of his concern as attorney. The principle thus limited, we deem the most reasonable.

In the case of *Newman* vs. *Payne*,[a] Newman, the complainant, after his relation as client had commenced with Payne, his attorney, promised to give Payne one thousand pounds when he should be able, upon coming into the possession of an estate, to which he would succeed, upon the death of his uncle, without issue, and gave a memorandum, stating the promise and condition, to induce his executor in the event of his death, to fulfil it. Afterwards, he made his bond to pay the thousand pounds at the death of his uncle, absolutely, and subsequently he

created a term of sixty years upon his reversionary interest in an estate as security for the bond. The Chancellor who heard the case, said, that such bonds were commonly put among cases which hold, "that upon general considerations of policy, the Court, without entering into the means used, or the character of the parties; but merely upon the relation of attorney and client, will not suffer them to stand."— By his decree, the bond and deed which created the term were set aside.

In *Walmesly* vs. *Booth*,[a] a bond obtained by an attorney from his client, during their relation, was set aside, upon the same ground. Lord *Hardwicke*, who made the decree, remarked, "I am of opinion that the court ought to pay no regard to such a bond, as it might be attended with bad consequences, by encouraging attornies, after they have got into the secrets of their clients, to extort from them unreasonable rewards to themselves." He said, also, that the reason the Court goes upon, in such determination, is the great power and influence that an attorney has over his client. [a2 Atk 29.]

In the case of *Oldham* vs. *Hand*,[b] the Court said, that Booth the defendant in the case referred to in 2 Atkyns, refused, after he was employed, to endeavor to obtain bail for his client, until the bond should be given; but the report of the case contains no such fact. [b2 Ves. sen. 259]

In the case of *Montesquie* vs. *Sands*,[c] the Court recognised the principle to be, "that an attorney shall not take from his client a gift, or reward, while standing in that relation, the connection between them subsisting with the influence attending it, though the transaction may be as righteous as ever [c18 Ves.312]

3 v. P.                16

was carried on; that the connection must, as in the instance of guardian and ward, be *bona fide* dissolved before he can take any thing beyond his regular fees." (See also 18 Vesey, 119, 126, and the cases there cited.)

The Counsel for the defendant attempted to maintain the position, that such contracts, between an attorney and his client, in this State, were not within this principle, because attornies here do not form a class in the profession of law separate from that of counsellors, as they do in England, and the laws of the State do not prescribe the fees for services performed by attornies, or authorise the appointment of officers to tax their bills of costs.

It is true there is a difference in these respects, between attornies in that country and in this State.— There, they and solicitors have a right to be paid such reasonable fees as have been long settled in the profession, and allowed in the different Courts and in common law and Chancery business; there are officers of each of the Courts, whose duty it is to tax their bills of costs. In England, a counsel has no right to an action for his fees, for they are given to him, not as hire, but as a gratuity. If he had a right to demand fees, his contracts for them, entered into after his relation with a client had commenced, would be, doubtless, within the principle which governs such contracts with an attorney.

In this State, attornies and solicitors, when they undertake to do business, may make the measure of their compensation a part of the contract, by which they agree to perform the services needed; and, such a contract would be as binding upon the client, as any one into which he could enter.

If the amount of compensation be not fixed, by the terms of the contract, by which an attorney or solicitor was employed, he would be entitled to be paid such reasonable fees, as have been usually paid to others, for similar services. Counsellors and attornies are not separate classes, here : each attorney is a counsellor—every counsel, an attorney ; and, for all services performed by one, in whom the two characters are united, an action for fees, may be maintained.

In this case, the fee for the services, was settled by the contract between the parties : the same contract, by which the attorney undertook to bring the suits for the complainant. The complainant knew, with certainty, what he would be bound to pay, in case of success in all his suits, or in any other event.

A client does not know the amount of the bill of costs he will be required to pay his attorney, for a suit in an English Court. He knows the fee for each service, is settled ; but, he cannot know how many affidavits may be made, and other things done, which may, or may not be necessary, in the progress of the cause, to which he is a party.

As the contract which produced the relation between the parties in this case, ascertained the fee of the defendant, it was as irrevocably settled, as though a rule of law, which tolerated no contract upon the matter, had fixed it.

By the agreement, subject to which the note was given to the defendant, he was not to be entitled to any fee, should no lot be recovered. But, the judgment, in the same event, gave him a right to collect eight thousand dollars, the whole amount of the note. Upon the first contract, he was not, in any event, entitled to

interest upon the note, during the pendency of the suits. But, the judgment bears interest from its date. All the rights derived from the judgment would be exercised, if it were beyond the control of a Court of Equity.

The firmest ground for the support of the principle to which the complainant has resorted, for relief, consists of the confidence reposed by a client, in his attorney, and the influence which an attorney has, over his client. Confidence is as necessarily reposed, here, by a client, in his attorney, as it is in England. The influence of an attorney, during the connection, is as great here, as it is there; and, no consequence, against which it is the object of justice to guard, could attend such contracts, there, which would not follow them, in this country. Integrity of character and purity of motive, have never enabled such contracts to stand in full force, against the principle of equity, which commonly excludes all inquiry into the fairness of the transactions, and sets them aside, as violations of the policy of justice. No principle has been more rigidly adhered to, by the English Chancellors; and we shall not take the liberty to depart from it.

The principle will best preserve the high reputation of the profession, by elevating its members above the temptation to exercise their influence, to obtain advantageous bargains of their clients; and, consequently, above the suspicion of having done so.

Upon the same reasons, trustees are not allowed to fix the the amount of their compensation, by contracts, entered into, after they have accepted their trusts.[a]

[a] 1 John. Ch. 529

After the relation has ceased, attornies have a right to take what may be given to them, or paid, as compensation.[a] Their employment, in one suit, does not deprive them, while it is pending, of their right to make a contract, for compensation for their services, in another, or for any other professional business, with the same client.

[a] 2 Ves. Sr 259

The bill charges, that some of the suits were undetermined, when it was filed. As this fact was in the knowledge of the defendant, and not denied, it must be considered as admitted.[b]

The acts of the complainant, relied upon in the answer, to confirm the judgment, were all done during the relation of the parties, and are within the principle which has been applied to the judgment.— *Wood* vs. *Downs*.[c]

[b] 1 Porter's Rep. 375— 3 Bibb. 466, 539

[c] 18 Ves. 119, 129

In some cases, bonds, given to attornies, by their clients, have been suffered to stand as security for the sum which they were entitled to receive.[d] This course may be pursued, when it does not appear, that it will result in injury to the clients.

[d] 18 Ves. 126, 129

It is probable, all the suits which the defendant agreed to bring for the complainant, have been determined, and, that he is now entitled to as much of the note as he could ever demand. The judgment will therefore, be allowed to stand as security for the balance, if any, that may be due on the note—which must be ascertained, in reference to the condition in the agreement, which was appended to it.

The decree is reversed, and the case must be remanded to the Circuit Court of Mobile County; in which Court such proceedings must be had, as will carry into effect, the principles of this opinion.