# Dickinson *v.* Bradford.

*Specific Performance.*

1. *Transactions between attorney and client are closely scrutinized.*—Transactions between attorney and client, as between other persons occupying fiduciary relations, are anxiously and jealousy scrutinized by the courts, so that the client may be protected from the influence or ascendancy which the relation generates.

2. *Before the fiduciary relationship begins, any lawful contract may be made.*—An attorney may, before entering on the business of his client, lawfully contract for the measure of his compensation; and any contract then made is as valid and as unobjectionable as if made between other persons competent to contract with each other. But after the fiduciary relation has commenced, no subsequent agreement with his client for compensation can be supported, unless it is a fair and just remuneration for his services.

APPEAL from the Chancery Court of Talladega.

Heard before the Hon. B. B. McCRAW.

Taul Bradford and James B. Martin were partners in the practice of law; and while so engaged, they were employed as lawyers by A. Z. Dickinson in the prosecution of certain suits in his favor against Thomas Henderson, administrator *de bonis non*, with the will annexed, of Shadrack Dickinson, deceased. During the continuance of their employment by Dickinson, he made and entered into this agreement with them, viz.:

The State of Alabama, Talladega County. This agreement, made and entered into by and between A. Z. Dickinson, and Taul Bradford, and James B. Martin, witnesseth: That at the sale on the 25th of October, 1869, by Thomas Henderson, administrator *de bonis non*, with the will annexed, of the estate of Shadrack Dickinson, deceased, of the lands belonging to the said estate, and the mill and water power upon said lands and upon Chocoloco creek, wherever it may run through said lands, or any part thereof; there being two hundred and seventy-five acres of said lands (not including dower of decedent's widow), and the same being known as the "Dickinson Place," and upon which he lately, before his death, resided, and whereas the said Bradford, and the said Martin, are prosecuting claims in favor of the said A. Z. Dickinson, and against the estate of the said decedent, for $2,800, or $3,000; and whereas said lands were bid off at

said sale by James B. Martin for the said A. Z. Dickinson.. Now it is agreed that in consideration of the services of said Bradford and said Martin in prosecuting said claims against said estate as aforesaid, that the said A. Z. Dickinson is to, and will, convey to said James B. Martin and Taul Bradford, a one-half interest in all of said lands and property hereinbefore mentioned, just as soon as said sale is confirmed by the proper court, and the title directed to be made by said administrator *de bonis non*, with the will annexed.

JAMES B. MARTIN,<br>A. Z. DICKINSON,<br>TAUL BRADFORD,

Witness : RANDOLPH NEWSOM.

After the execution of the foregoing agreement, the firm of Bradford & Martin was dissolved, and Bradford became the sole owner of the interest in the land agreed by Dickinson to be conveyed to Bradford & Martin.   After the dissolution of the partnership, Bradford continued " in sole charge as attorney of said Dickinson, of the cases in the Circuit Court of Talladega county, and conducted them to a successful issue in his favor."

On the first day of July, 1873, Taul Bradford filed a bill of complaint in the Chancery Court of Talladega county, against A. Z. Dickinson, for the purpose of enforcing a specific performance of the said contract.   The other facts of the case sufficiently appear in the opinion of the court.

JOHN T. HEFLIN, for appellant.

W. H. FORNEY, and RICE, JONES & WILEY, for appellee.

BRICKELL, C. J.—The bill is filed to enforce the specific performance of a contract, made between attorney and client, after the relation had been formed, by which the client, in consideration of services which had been, and were to be rendered, covenanted to convey to the attorney an undivided half of a described tract of land.   There are many disputed questions of fact involved, which are immaterial in the view we are constrained to take, and a consideration of which is, therefore, unnecessary.   The relation of an attorney to his client is one of trust and confidence, in which influence is of necessity acquired.   The law does not incapacitate him from contracting with, or from becoming the recipient of the bounty of the client.   It does, however, command that all his transactions with the client shall be anxiously and jeal-

[Dickinson v. Bradford.]

ously scrutinized, that the client may be protected from his own overweening confidence, and from the influence or ascendancy which the relation generates.—1 Story's Eq. §§ 310–14; 2 Lead. Eq. Cases (4th Am. ed.) 1216. There may be no trace of deceit, or of imposition, or of overreaching advantage—no mark of actual fraud, which would justify a court in interfering for the rescission, or in refusing to compel performance, if the contract had been made between persons not sustaining a relation in which confidence was reposed, and influence acquired. The court does not interfere, or refuse interference, because there has been deceit, or imposition, or actual fraud, but independent of such facts and ingredients, upon considerations of public policy, to prevent fraud, an abuse of confidence and influence, and to compel fidelity and unselfishness in the performance of fiduciary duties.

In this State, attorneys and solicitors, are entitled to compensation for their services. Before entering on the business of the client, and suffering him to repose in them, the trust and confidence of the relation, they may stipulate the measure of their compensation, and if the client assents, the contract is as valid, and as free from objection, as any other contract into which he may enter. But, if they assume the relation, enter on the duties, thereby inviting confidence, and acquiring influence, without expressly stipulating the measure of compensation, no subsequent agreement with the client can be supported, unless it is satisfactorily shown that the compensation does not exceed a fair and just remuneration for the services which have been, and which it is the duty of the attorney to render.—*Lecatt v. Salle*, 3 Port. 115; *McMahon v. Smith*, 6 Heisk. (Tenn.) 167; *Planters' Bank v. Hemberger*, 4 Cald. 578.

Standing, as the parties do, in a relation of confidence, which gives the attorney or solicitor an advantage over the client, the burthen of proof lies on the attorney or solicitor; and to support the contract made while the relation existed, he must show the fairness of the transaction, and the adequacy of the consideration. The principle is thus stated by Judge STORY: "But the burden of establishing its perfect fairness, adequacy, and equity is thrown upon the attorney, upon the general rule, that he who bargains in a matter of advantage with a person, placing confidence in him, is bound to show that a reasonable use has been made of that confidence; a rule applying equally to all persons standing in confidential relations with each other."—1 Story's Eq. § 311. In the American note to *Huguenin v. Basely*, 2 Lead. Eq.

[Dickinson v. Bradford.]

Cases, 1216, the principle is stated as follows, and numerous authorities cited in support of it: "In England, the policy of the law forbids an attorney to contract with his client, or accept any benefit from him, beyond the remuneration to which he is entitled for his professional services; and although the rule in this country is less stringent, such transactions are closely scrutinized, and the burden of the proof is on the attorney to show, not only that he used no undue influence, but that he gave his client all the information and advice as against himself, which it would have been his duty to afford, if he had been duly retained in a matter where his own interests were not involved. It should, moreover, appear that the transaction was not disadvantageous to the client, nor one which a prudent man would have declined. If it is a contract, *the consideration must be full*, if a gift, it must not be so large as to impair the donor's ability to provide for himself, and the members of his family; and the burden of proof on these and other material points is on the attorney, and not on those who seek to avoid the deed or transfer."

Having entered on the duties of the relation without a contract stipulating the measure of compensation, the appellee and his partner, had no other legal claim on the appellant, than the right to demand of him reasonable compensation for their services. If the contract subsequently made stipulates for greater compensation, it can not be supported, unless it affirmatively appears that there is an absence of undue influence, and the best evidence of its absence, would be that the attorneys gave to their client the information and advice, which it would have been their duty to give, if the client had been dealing with a stranger, conferring on him the same rights and advantages, on the same considerations, which the contract confers on them.

The claims which the attorneys were prosecuting did not amount to three thousand dollars. They were not litigated, and were against a decedent, whose estate had been declared insolvent. It was not supposed that the full amounts of the claims could be collected, though by a vigilant scrutiny of other claims against the decedent, it was supposed the dividends of the assets applicable to those claims would be increased. The lands, an undivided half of which the appellant covenanted to convey to the attorneys, had been purchased by him at public sale for cash, a few days previous to the contract, Martin, one of the attorneys, bidding for him, at the price of thirty-one hundred dollars. The value of the lands was not less, according to the estimate of any witness,

than twenty-five hundred dollars.  The lands were the estate of the decedent, and constituted the only source from which funds were to be derived for the payment of his debts.  The amount actually realized by the appellant on his claims, was twelve hundred and fifty dollars, and this was allowed to him in part payment of the purchase-money of the lands.  The result of the contract is consequently to give the attorneys, as compensation for their services in the prosecution of the claims, not only all, which was realized on them, but to compel the appellant to pay three hundred dollars in money, that they may obtain an undivided half of the lands.  It is too plain, a prudent man would have declined entering into a contract, involving such consequences, if free from extraneous influences.

The evidence fails to show, that in any event the reasonable compensation of the attorneys, could have exceeded three hundred dollars, and it fails to show that when this contract was entered into, the appellant was not under the influence, and that it was not the offspring of the influence of the relation existing between the parties.  There was no information to the client, that he was liable only for reasonable compensation, or of the amount of such compensation.  There was no communication to him, that he was bound to pay the sum he had bid for the lands, or that if he failed, he could be made liable for the difference between the sum he had bid, and the price they commanded on a resale, and that if such liability was incurred, he must bear it, the attorneys not sharing it, and he remaining liable to them, for reasonable compensation for their services.  Nor is it shown, that he was advised, that if the contract into which he had entered, could be enforced according to its terms, the judgment on his claims might be adverse, and nothing realized from them, and yet, if he paid the purchase-money, he would be bound to convey to his attorneys an undivided half of the lands.  Independent of all these considerations, the traces of the influence of the relation, developed themselves, at the moment of the execution of the contract.  It was produced by Martin, and he said to the subscribing witness, that he wished him to attest it, with the declaration to the appellant that it was a long instrument, and there was no necessity for reading it to the witness, to which the appellant assented.  The instrument is not long, containing not more than two hundred and seventy words, and the reason for not reading it, is certainly frivolous.  There was no necessity for reading it to the subscribing witness, or that it should be read by

[Dickinson v. Bradford.]

him, yet, there was a manifest propriety in requiring him to read it aloud to the appellant, that there should be satisfactory evidence the appellant had full opportunity to know its contents.   There is no evidence, when it was written, though it is not a disputed fact that it was written by Martin ; nor is there evidence that it was ever read to appellant, or that he was informed of its terms and operation before executing it.   Without disregarding well established principles the contract can not be enforced.   Though most often, the validity of contracts between persons standing in confidential relations, is contested in suits for the rescission or cancellation of such contracts, the causes which will authorize their rescission are available against decreeing specific performance of them.

If the appellant had been the actor, seeking a rescission of the contract, the court would have compelled him to do equity, and would have decreed that the contract should stand as a security to the appellee for the payment of a reasonable compensation for his services.   But the appellee is the actor, and the primary object of the bill, all that gives jurisdiction to the court of equity, is the specific performance of the contract.   The appellee has a clear legal right to fair and reasonable compensation for his services, but it is a legal demand, of which a court of law has full jurisdiction, and is capable of affording an adequate remedy.   It does not spring out of the contract, but is independent of it, and can not justify a decree in his favor in the present suit.   A court of equity having jurisdiction of a case, will generally settle the entire litigation, though it may involve the enforcement of legal demands, for which there is an adequate remedy at law.   This is true only when the court has jurisdiction of the primary purposes of the bill, and the right to relief in respect to them is shown, and the legal demand is consequent to them.   The rule does not apply when the primary objects of the bill fail.—*Pond v. Lockwood*, 8 Ala. 669.

The decree must be reversed, and a decree must be here rendered dismissing the bill at the costs of the appellee in this court and the court of chancery.