# Kidd, Executrix, v. Williams.

*Bill to Enjoin Foreclosure of Mortgage.*

(Decided December 17, 1901.)

1. *Attorney and client; nature of relation.*—An attorney and client, during the time the relation exists, in respect to any matter being conducted by the attorney for the client, sustain the relation of trustee and *cestui que trust,* and their dealings with each other are subject to the same intendments and imputations as obtain between other trustees and beneficiaries.

2. *Same; rights of attorney as to contracts for compensation.*—Attorneys are not allowed to fix the amount of their compensation by contracts entered into after they have accepted their trusts; but their employment in one suit does not deprive them, while it is pending, of their right to make a contract for compensation for their services in another, or for any other professional business, with the same client.

3. *Same; agreements between attorneys and client as to compensation for services already rendered; independent advice to client.*—When the business is over, and the client, being *sui*

[Kidd, Executrix, v. Williams.]

*juris* and fully informed as to the business transacted, and being on equal terms and dealings at arm's length with the attorney, voluntarily stipulates with him for compensation for his services which have been rendered, such settlement cannot be set aside by the client on the ground that he did not have competent and independent advice in making such settlement, unless there has been on the part of the attorney some deceit, imposition, overreaching, unconscionable advantage, or other mark of fraud.

4. *Same; dealings between; burden of proof.*—The burden is on an attorney to show that a transaction between himself and his client was perfectly fair.

5. *Same; independent advice; when necessary to be shown, as affecting transaction between.*—Unless it appears that the client in making a settlement with his attorney, has been placed in such a position as would enable him to form an entirely free and unfettered judgment, independent altogether of any sort of control, it would be necessary to show that the client had independent advice, in order to remove the presumption of unfairness.

6. *Attorney and client; transactions between; what considered in determining fairness of.*—The courts, in passing upon the fairness or unfairness of settlements between attorney and client, should always consider the client's age, his experience or inexperience, his mental and physical strength, or the lack of it, and general capacity to know, appreciate and understand the matter of a settlement with his attorney.

7. *Same; when settlement held binding on client.*—Where a client, at the time of a settlement with his general counsel and attorney of all indebtedness due from the attorney to the client, was on intimate, friendly and confidential terms with the attorney, was 60 or 65 years of age, experienced and capable in business and financial affairs, labored under no disability such as would impair his will and capacity, and had accumulated a fortune of from $150,000 to $200,000; and where the client himself suggested the settlement, after having come to the attorney's office and received some money from him, stating to the attorney that he (the attorney) had paid him a good deal of money and he thought it his duty to give him a final receipt in full, and asked the attorney to write it, which he did; and the client then required that the receipt should be attested by two witnesses, whom he procured, and afterwards stated that the attorney owed him nothing. *Held*: That the settlement, being in respect of services already performed by the attorney, was binding upon the client and his estate, and settled all indebtedness from the attorney to

the client, although the evidences of said indebtedness were never surrendered to the attorney and although the client made the settlement without having competent, independent advice.—(TYSON, J., *dissenting*.)

8. *Deposition, when will not be suppressed.*—The deposition of a witness will not be suppressed because on cross-examination he declined to answer interrogatories which are impertinent to any of the issues in the case and are of a fishing character as to witness' private affairs.

APPEAL from Elmore Chancery Court.

Heard before Hon. R. B. KELLY.

This was a bill filed by A. E. Williams to enjoin the foreclosure of a mortgage executed by him to H. B. Tulane, the bill being filed against Louisa V. Kidd, executrix of Tulane's estate. A motion was made to suppress the deposition of the witness Hancock because of his failure and refusal to answer certain cross-interrogatories. The other material facts are shown by the opinion.

GUNTER & GUNTER, for appellant.—(1.) All transactions between persons holding confidential relations, whereby the person in whom confidence is reposed obtains a donation of pecuniary advantage, are void upon their face, rendering it incumbent on the person claiming the benefit of such transactions to show that the relation was entirely severed for the time being, by the interposition of competent and independent advice to the party making the donation.—*Noble v. Moses,* 81 Ala. 540; *Bancroft v. Otis,* 91 Ala. 279; *McQueen v. Wilson,* 31 So. Rep. 94; *LeCatt v. Sallee,* 3 Porter 115; *Dickerson v. Bradford,* 59 Ala. 581; 2 Pomeroy's Eq. Juris., § 960. (2) The refusal to answer cross-interrogatories is good ground for suppressing a deposition.—*Harris v. Miller,* 30 Ala. 221.

GORDON MACDONALD, JOHN D. MCNEEL, PARKER & GOLSON and H. L. WILLIAMS, *contra,* cited *Holt v. Agnew,* 67 Ala. 360; *Young v. Hooper,* 73 Ala. 119; *Noble v. Moses,* 81 Ala. 560; 54 Ala. 532; 5 Ala. 90; 75 Ala. 555; 81 Ala. 540.

HARALSON, J.—The relation of attorney and client has been much discussed in this court, and in other courts, and is well understood. The principle settled is, that they sustain to each other, during the time the relation exists, in respect to any matter being conducted for the client by the attorney, the relation of trustee and *cestui que trust,* and their dealings with each other are subject to the same intendments and imputations as obtain between other trustees and beneficiaries.—*Young v. Hooper,* 73 Ala. 119; *Dickinson v. Bradford,* 59 Ala. 581.

Upon this principle, attorneys "are not allowed to fix the amount of their compensation by contracts entered into, after they have accepted their trusts. After the relation has ceased, attorneys have a right to take what may be given to them, or paid, as compensation. Their employment in one suit, does not deprive them, while it is pending, of their right to make a contract for compensation for their services in another, or for any other professional business, with the same client."*Lecatt v. Sallee,* 3 Port. 115, 124. The principle in all our cases is, that while the confidential relation lasts, and as to its subject-matter, there must be no abuse of confidence with respect to it, by which the attorney secures an unjust advantage over the client. It is easy to see, that in such time, and as to the business in which he is employed, the attorney could make unfair and unconscionable demands to which the client would yield, although he regarded them unjust, out of the fear of the consequences of a refusal, or from the attorney's undue influence over him; but, when the business is over, and the client, being *sui juris,* and fully informed as to the business transacted, and is on equal terms and dealing at arm's length with the attorney, voluntarily stipulates with him for compensation for his services which have been rendered, we are not aware of any principle on which such settlement can be properly set aside by the client, on the ground that he did not have competent and independent advice in making such settlement. Such a settlement could be set aside alone on the ground that there had been "some intermixture of deceit, imposition, overreaching, unconscionable advantage, or other mark

of direct and positive fraud."—1 Story Eq. Juris., §
307; 2 Pom. Eq. Juris., § 960.

The rule, even when the relation exists, is well ex-
pressed,—sustained apparently by numerous cases,—in
3 Am. & Eng. Ency. Law (2nd ed.), 334, as follows:
"An attorney is under no actual incapacity, however, to
deal with or purchase from his client; all that can be
required is, that there shall be no abuse of the confi-
dence reposed in him, no imposition or undue influ-
ence practiced, nor any unconscionable advantage taken
by him of the client. As has been stated, in a transac-
tion of this character the burden is upon the attorney
to show its perfect fairness; but if the court is satis-
fied that the party sustaining the relation of client,
performed the act or entered into the transaction volun-
tarily, deliberately, and advisedly, knowing its nature
and effect, and that no concealment or undue means were
used to secure his consent to what was done, the trans-
action will be upheld." If the client is competent and
capable, and with full knowledge of the transaction he
proposes to settle with his attorney, acts deliberately,
and voluntarily settles his account for services with his
attorney, there would seem to be no indispensable neces-
sity for independent advice on the subject. This would
certainly be true, when shown that there had been no
fraud, deceit or unconscionabe advantage practiced by
the attorney on the client, which would rebut the pre-
sumption of a violation of confidence reposed, as much
so as independent advice would do. All that is neces-
sary is, for the client to be placed in such a position as
would enable him "to perform an entirely free and un-
fettered judgment, independent altogether of any sort
of control." If this does not appear, it would be neces-
sary to show that the client had independent advice, in
order to remove the presumption of unfairness. But
when this presumption is otherwise removed, a rule
that would, in addition, require independent advice,
would seem to be arbitrary and unnecessary. "It is
only when confidence is abused, that courts of con-
science interfere," and this essential fact in such cases
may be shown by any competent evidence. Independent
advice is simply a means of proof to establish the fair-

ness of the settlement, and that it was voluntarily entered into, free from undue influence. This is made clear under the decisions of this court.—*Moses Bros. v. Noble,* 86 Ala. 408; *Noble v. Moses Bros.,* 81 Ala. 530.

Of course, the satisfaction necessary for a court of equity to have, in order to sustain or set aside a settlement of the kind, would vary according to the circumstances of, and the evidence presented in, each cause. The age, and experience or inexperience of the client, his mental and physical strength, or the lack of it, and general capacity to know, appreciate and understand the matter of a settlement with his attorney, should always be considered. If a beneficiary in any case is young and inexperienced and easily influenced by the trustee,— whether parent, guardian, attorney or one acting in other trust relation,—it would require more evidence to remove the presumption of unfairness in a settlement between them, than in a case where the beneficiary is mature, experienced in business, of force of character and labors under no infirmity of body or mind. This is aptly illustrated i nthe case of *Noble v. Moses Bros., supra.*

In the present case it appears the complainant was the general counsel and attorney of H. B. Tulane; that Tulane was about 60 or 65 years old when he settled with his said attorney, on the 2nd of July, 1897; that as attorney and client, and personally, they were intimate, friendly and confidential; that Tulane was of experience and capacity in business and financial matters, labored under no disability such as would impair his will and capacity, and had accumulated a fortune, as alleged and admitted, of from $150,000 to $200,000. It appears, that complainant was considerably indebted to said Tulane on the 2nd of July, 1897, for moneys borrowed, secured by mortgages, and Tulane was indebted to him in a considerable amount, and on that date, a settlement was had between them, which reads: "Wetumpka, Ala. For and in consideration of his services for the past five years, and for his faithful attention thereto, when required, and now, for the liquidation thereof, I do hereby receipt A. G. Williams in full of all accounts, notes, claims, mortgages or otherwise due

10s

from him to me. This 2nd July, 1897. (Signed) H. B. Tulane. Attest, J. A. Howle, J. M. Howle." Defendant's contention is, that the settlement ought not to be allowed to stand, because it was made by attorney and client, when the latter was without independent, competent advice.

An effort was made by defendant, to show that this receipt was not signed by said Tulane, but was a forgery; but the evidence overwhelmingly established the fact of the genuineness of Tulane's signature. Dr. J. A. Howle, one of the attesting witnesses, who appears to be disinterested, cautious in his statements, and whose credibility is in nowise assailed, testified that he saw Tulane sign the receipt in his presence and in the presence of the other witness, J. M. Howle; that Tulane came to the office, occupied by complainant and witness, and there was some money paid by complainant to Tulane, and the latter stated to complainant, that he had used him a good deal, and that he, complainant, had paid him a good deal of money, and he, Tulane, thought it his duty to give him a final receipt, and asked complainant to write it, which he did. Tulane required that the receipt should be attested by two witnesses, and asked complainant to go out and get another person besides the witness, which he did, bringing with him from the store below, J. M. Howle, who, with witness, attested Tulane's signature thereto; that Tulane read the receipt before he signed it, and he and complainant stated, after it was signed, that all services (or indebtedness) to each party would be paid up by that settlement, and Tulane made that suggestion himself. Witness further stated, that the suggestion of this settlement came, as he heard it, from Tulane and not from Williams; that he was intimate with Tulane, regarded him as of sound mind, not easily influenced by others and careful in business matters. The other attesting witness testified to substantially the same thing as to the execution of said instrument. The evidence of many other witnesses corroborated that of Dr. Howle in his estimate of the soundness, capacity and business carefulness of said Tulane. Afterwards, while in Nashville, in speaking of Williams to Han-

[Langley v. Andrews, Adm'r. Etc.]

cock, Tulane stated, as Hancock deposes, that Williams owed him nothing, and that he had had a settlement in full with him.

After a careful review of the evidence, we are of the opinion, that the receipt was executed at the instance and suggestion of said Tulane; that he was competent to contract, and executed the same freely and voluntarily and with full understanding of the matters he was settling and that the settlement was in respect to services of the attorney already performed, and not as to business then being prosecuted or attended to by the attorney for his client. We are of the further opinion, that he was not under the control of said Williams, at the time, or at any other time, nor was he unduly influenced by him. That the debt remaining due on the mortgage, the foreclosure of which is sought to be enjoined in this suit, was settled and intended by the parties to be settled, by said acquittance of the 2nd of July, 1897, admits of no doubt. The injunction against the foreclosure of said mortgage by defendant, Kidd, as executrix, should be perpetuated.

The witness, Hancock, answered all the cross-interrogatories that were pertinent to the case. Those he declined to answer, to say no more of them, were impertinent to any of the issues, and were largely of a fishing character.

We find no error in the record, and the decree of the chancery court is affirmed.

Affirmed.

    Tyson, J., dissenting.