R. J. BOLLES, *Appellant,* v. WILLIAM O'BRIEN, *Appellee.*
*Original Bill.*

R. J. BOLLES, *Appellant,* v. WILLIAM O'BRIEN, *Appellee.*
*Cross-Bill.*

1   Owing to the confidential and fiduciary relation between an attorney and his client and to the influence of the attorney over his client growing out of that relation, courts of law, and especially of equity, scrutinize most closely all transactions between an attorney and his client.

2.   To sustain a transaction of advantage to himself with his client, the attorney has the burden of showing, not only that

he used no undue influence, but that he gave his client all the information and advice which it would have been his duty to give if he himself had not been interested, and that the transaction was as beneficial to the client as it should have been had the client dealt with a stranger.

3.  Independent of all fraud, if an attorney shall take what is in substance a gift from his client, while the relation subsists, though the transaction may be, not only free from fraud, but entirely moral in its nature, the law casts upon the attorney the burden of showing that the transaction was voluntary and fair on the part of the client and that he acted with full warning and perfect knowledge of the consequences of his act. Contracts between attorney and client when not entirely equitable and fair may be voidable at the election of the client.

4.  The whole burden of establishing by clear and convincing evidence the fairness of an agreement purporting to convey a property right from a client to his attorney, and that it was made upon full and adequate consideration, is cast upon the attorney.

5.  The written instrument set out in the opinion prepared by the attorney at his own instance and signed by the parties thereto while the relation of attorney and client existed between them with reference to the subject of the agreement, when considered in the light of the law as to conveyances and as to contracts between attorney and client, and in view of the evidence as to lack of full knowledge by the client as to its effect, does not create a partnership or a trust in the lands or in the profits from lands referred to in the instrument.

6.  In view of the relation of attorney and client existing between the parties, of the character of the instrument set out in the opinion, and of the evidence that the client did not have full knowledge and understanding of the effect and consequences of the agreement prepared by the attorney at his own instance without adequate consideration furnished on the part of the attorney, the agreement is not enforceable and should be cancelled.

Appealed from the Circuit Court for Duval County.

The facts in the case are stated in the opinion of the court.

*W. S. Jennings, J. C. Cooper* and *C. E. Jennings,* for Appellant;

*E. J. L'Engle,* for Appellee.

WHITFIELD, C. J.—A suit in equity was brought by Bolles to cancel an instrument of writing relating to lands, or to dissolve the co-partnership, if any exists, under the instrument, upon the theory that because of the relation of attorney and client existing between O'Brien and Bolles with reference to the lands, the circumstances under which the instrument was prepared by O'Brien, the attorney, and signed by Bolles, and the lack of consideration on the part of O'Brien for the interest he claims, the agreement is an imposition upon Bolles and any recognition or enforcement of it inequitable to Bolles. The agreement is as follows:

"Colorado Springs, Colo., January 19, 1909.

This agreement of co-partnership between R J. Bolles and Wm. O'Brien Witnesseth:

Whereas the parties hereto have obtained certain grants and agreements with reference to lands in the Everglades in Dade and Lee Counties, Florida, Southeast and West of Lake Okeechobee, running to R. J. Bolles, as follows: From the Southwestern States Timber Company approximately two hundred and ninety-five thousand (295,000) acres; from and out of which about 108,000

acres have been transferred to the Florida State Drainage Land Company. From the Henderson heirs approximately eighty-five thousand (85,000) acres; and from the Board of Trustees of the Internal Improvement Fund of the State of Florida approximately five hundred thousand (500,000) acres, and it is proposed to complete the purchase of, own, deal in, handle and sell such lands and others in said Everglades, through agencies and otherwise and companies.

It is therefore hereby agreed that a co-partnership is declared and established in said lands and business for said purposes, and that the interests therein of the parties hereto is and shall be as follows: R. J. Bolles, three-fourths (¾) interest and Wm. O'Brien one-fourth (¼) interest and the profits and losses shall be shared accordingly.

Each of the parties shall be first repaid their advances to said business with 8 per cent interest per annum; said R. J. Bolles shall receive as salary for services out of the business eight hundred dollars per month, and Wm. O'Brien shall receive as salary for services out of the business four hundred dollars per month.

All monies required to pay for the lands may be withdrawn from the business before any distribution of profits is made.

(Signedl)

R. J. Bolles,

Wm. O'Brien."

By answer O'Brien in effect admitted the existence of the relation of attorney and client between the parties; that as attorney, associate and friend he had been on intimate and confidential terms with Bolles for years; and that when the instrument prepared by him was signed by Bolles he was the trusted attorney and adviser

of Bolles. But he denied the allegations as to imposition on his client, and in effect set up facts in support of his claim that the agreement is legal, equitable, fair and binding on the parties; O'Brien also filed a cross-bill, setting up, with other matters, substantially the averments contained in his answer, and prayed for an accounting as partners under the agreement. Bolles answered the cross-bill upon the theory of his original bill; and upon replications being filed, testimony was taken. The court dismissed the original bill, and decreed a partnership and ordered an accounting on the cross-bill. Bolles appealed from the decree.

Owing to the confidential and fiduciary relation between the attorney and his client and to the influence of the attorney over his client growing out of that relation, courts of law, and especially of equity, scrutinize most closely all transactions between an attorney and his client. To sustain a transaction of advantage to himself with his client, the attorney has the burden of showing, not only that he used no undue influence, but that he gave his client all the information and advice which it would have been his duty to give if he himself had not been interested, and that the transaction was as beneficial to the client as it would have been had the client dealt with a stranger. An agreement made between an attorney and his client, after the fiduciary relation has commenced, whereby the attorney is to secure greater compensation than was at first, either expressly or impliedly, agreed upon, is valid and enforceable only to the extent of reasonable compensation for the attorney's services.

Independent of all fraud, if an attorney shall take what is in substance a gift from his client, while the relation subsists, though the transaction may be, not only free

from fraud, but entirely moral in its nature, the law casts upon the attorney the burden of showing that the transaction was voluntary and fair on the part of the client, and that he acted with full warning and perfect knowledge of the consequences of his act. Contracts between attorney and client when not entirely equitable and fair may be voidable at the election of the client. The whole burden of establishing by clear and convincing evidence the fairness of an agreement purporting to convey a property right from a client to his attorney, and that it was made upon full and adequate consideration, is cast upon the attorney. See 4 Cyc. 960 *et seq.,* and notes; Wright v Proud, 13 Ves. Jr. 136; Hunter v. Atkins, 10 Eng. Ch. *113; Hatch v. Hatch, 9 Ves. Jr. *292; Harris v. Tremenheere, 15 Ves. Jr. 34; Rogers v. Marshall 3; McCrary (U.S) 76; Rogers v. R. E. Lee Mining Co., 9 Fed Rep. 721; Lewis v. Yale, 4 Fla. 418; Lane v. Black, 21 West Va. 617; Crockeron v. Savage, 75 N. J. Eq. 589, 73 Atl. Rep. 33, 23 L. R. A. (N.S.) 679 and notes; 3 Am. & Eng. Ency. Law (2nd ed.) 322 and notes; Wood v. Downes, 18 Ves. Jr. *120; Planters' Bank of Tennessee and D. Weaver v. J. C. Hornberger and W. P. Hume, 4 Cald. (Tenn.) 531; Story's Eq. Jur. Secs 310 *et seq.*

The evidence does not sufficiently show full knowledge and understanding by Bolles, the client, of the effect and consequences of the agreement prepared by O'Brien, the attorney, on his own initiative; and the perfect fairness, adequacy and equity of the agreement is not made to clearly appear. In Kidd v. Williams, 132 Ala. 140, 31 South. Rep. 458, and other similar cases cited for the appellee the facts show that the client was at least on equal footing with the attorney.

It is contended by Mr. O'Brien that prior to the date of the instrument herein considered there was an under-

standing of some character between the parties that they would when the opportunity was afforded enter into a joint venture for their mutual benefit. This is denied by Mr. Bolles, and the evidence does not show that Bolles and O'Brien discussed or considered any definite subject or plan of agreement. On the morning of January 19th, 1909, Mr. O'Brien suggested to Mr. Bolles, that an agreement be formulated with reference to the Florida business. Bolles assented to the suggestion and O'Brien drew up in duplicate the instrument before us, with some blanks in them for the proportions of interest and salaries to be filled in, and brought them into Bolles' office. It appears that they discussed the question of their respectice profits, and filled up the blanks, fixing the profits at ¾ to Bolles and ¼ to O'Brien, and also fixing the salaries of each. The last sentence of the agreement was also added. The time occupied was a very short one. The contract was not explained to Bolles, and there was no discussion of the lands it covered, or its effect. It was promptly signed by the parties. Bolles did not again consider the instrument for more than a year, and no reference to or claim under it was made by O'Brien till Bolles inofrmed him that he was not bound by it.

It appears that Bolles made purchases during the year 1908 of large tracts of land with his own means and in his own name, while O'Brien acted in the matter as confidential attorney, friend and adviser to Bolles, as he had done for many years. The contract here considered was made at the instance of O'Brien during the continuance of the relation of attorney and client with reference to the lands. Bolles in effect testified that when he signed the instrument he trusted O'Brien and was not fully advised of its contents and legal effect, and that when he did discover its real contents and legal effect, he protested

that it was not the agreement he made with O'Brien. Bolles testified he supposed the instrument related to a portion of the property he had offered O'Brien an interest in. O'Brien does not claim that he fully explained the instrument to Bolles, but in effect testifies that Bolles read it and knew of its purport. The circumstances do not satisfactorily sustain O'Brien's contention; and owing to the relation of attorney and client the burden was upon him to clearly and fully show Bolles' complete knowledge of the contents and legal effect of the instrument and the fairness and equity of the agreement.

The testimony shows that Bolles had studied law and was a very competent and experienced business man; that the relation of attorney and client existed between O'Brien and Bolles with reference to the lands; and that when the agreement was proposed and written by O'Brien he was and had long been the trusted and confidential attorney, friend and adviser of Bolles. Although Bolles had studied law in his early life, and although O'Brien may not have intended any wrong doing, he should have fully advised Bolles of the contents and legal effect of the agreement prepared by and at the instance of the attorney and signed by Bolles under circumstances that gave the attorney an advantage over the client.

Mr. O'Brien testified he did not call attention to or explain to Mr. Bolles the peculiarly comprehensive terms of the instrument because he regarded the language as being very plain and not needing any discussion. The legal effect of the instrument is not plain and its character required explanation. He also testified that by his error the instrument refers to lands obtained "from the Southwestern States Timber Company" when the lands were obtained from the "Southern States Land and Timber Company." In this connection Mr. O'Brien was asked

the question: "Can you state whether or not Mr. Bolles, the complainant, understood what land was referred to by that reference?" He answered; "No. But it was the only land that we had obtained in the Everglades in Florida up to that time. What I mean to say is, the lands described in this agreement, or attempted to be described in this agreement, were the only lands we had obtained up to the date of that contract." All of which goes to support Bolles' contention that this contract was not read or understood by him and shows that it was hastily drawn and not fully considered when it was signed. The cross-bill does not seek to reform this contract in the description of property that is admitted to be erroneous.

Mr. O'Brien also testified that he used the term in the agreement "Whereas the parties hereto have obtained certain grants and agreements with reference to lands———— ———— running in the name of R. J. Bolles" because of his understanding that he was to have an interest in the lands for the work he had done not only as an attorney, but also of an advisory and business nature. It seems clear from the entire record that Mr. O'Brien's relation to Mr. Bolles with reference to all the lands was that of confidential and trusted attorney, adviser and friend, and that O'Brien furnished no part of the consideration paid for the lands obtained in the names of Bolles. It is also clear that Mr. Bolles did not intend to give to Mr. O'Brien an interest in his lands. When Bolles discovered the real character of the agreement he wrote O'Brien that he had not paid money or rendered the service contemplated by the agreement, and O'Brien replied that he did not promise to pay money or to render service. This only emphasizes the lack of full consideration that is necessary to support the transfer of a property interest from the client to the attorney at the instance of the attorney

while the relation of attorney and client existed with reference to the property. The evidence does not show that O'Brien explained to Bolles the contents and effect of the instrument as it was his duty to do in view of the relation of attorney and client existing between them with reference to the lands, particularly in view of the sweeping terms of the instrument. Bolles and O'Brien did discuss the features of the agreement relating to the division of profits and the amount of salary to be received by each. But the insistence of Bolles is that he did not read the first part of the agreement, as he trusted O'Brien and supposed it referred to a portion of the land he had offered O'Brien an interest in upon payment therefor.

In view of the relation of attorney and client existing between the parties, of the character of the instrument, and of the circumstances under which it was signed without adequate consideration furnished on the part of the attorney, the agreement is not enforceable.

The instrument as above set out does not describe specific lands. It is not under seal and is not witnessed as required by the statute, and is insufficient to convey to O'Brien any interest in lands which appear to have been purchased solely by Bolles, the titles being in his name, with nothing to indicate any interest of O'Brien therein, or any consideration therefor contributed by or for O'Brien. See Graves v. Harris, 63 Fla. 169, 58 South. Rep. 236.

The instrument is not a contract to convey an interest in the lands to O'Brien. It in legal effect does not create a partnership in the lands. O'Brien did not furnish an adequate consideration for a one-fourth partnership or other interest in the lands, and the instrument gave to O'Brien no rights to manage or to dispose of the property or its proceeds. A one-fourth partnership

interest in the profits of all the lands, if sufficiently pro-
vided for, is clearly inequitable even if the profits were
contingent and liable to great and sudden fluctuations.
This results from the relation of attorney and client exist-
ing between the parties concerning the lands and the gross
inadequacy of the consideration and other circumstances
attending the signing of the agreement by Bolles at the
instance of his attorney, even though O'Brien had no in-
tention to mislead or impose upon his client Bolles. No
resulting trust is shown since O'Brien did not furnish
any part of the consideration paid or to be paid for the
lands.

In view of the evidence O'Brien has no interest, legal
or equitable, in the lands; and under the evidence the in-
strument in controversy does not in law give to O'Brien
any partnership or equitable rights in the lands or in
the profits arising from sales of the lands in which he
has no legal or equitable rights. O'Brien paid about
$1,800.00 for the benefit of Bolles, but not as a part of
the purchase price of the lands bought by Bolles.

The evidence indicates that Bolles is indebted to
O'Brien for services rendered and for money paid for
Bolles's benefit, for which Bolles is liable in an action or
suit in due course of law. But the written instrument
set out herein, when considered in the light of the law
and the evidence, does not create a partnership or a trust
in the lands or in the profits.

The decree is reversed with direction to enter a decree
cancelling and annulling the written instrument signed
by R. J. Bolles and Wm. O'Brien, dated Colorado Springs,
Colo., January 19, 1909, and dismissing the cross bill of
the appellee William O'Brien, but without prejudice to his
right to sue at law upon a *quantum meruit* for his serv-

ices as attorney and for money paid by O'Brien for the benefit of Bolles.

TAYLOR and HOCKER, J. J., concur.

SHACKLEFORD and COCKRELL, J. J., dissents

TAYLOR, J., concurring.

I concur with the opinion prepared by the Chief-Justice. The agreement in dispute between the parties, according to all the proofs, misstates a very important fact. It states in effect that the said parties, Bolles and O'Brien, had jointly acquired the lands described therein, whereas the proofs all show without dispute that O'Brien had no part whatever in the acquisition of any of said land; that he did not contribute any part of the purchase money therefor, neither was he obligated for any part of the purchase price thereof; and said proofs all show that Bolles paid all of the purchase price so far paid, and has his individual obligations outstanding for the remainder therof. Indeed the proofs all show that Bolles acquired all of the lands mentioned in said instrument on his own sole initiative, without any financial assistance from O'Brien. The proofs further show that the one-fourth interest going to O'Brien in the proceeds of the sale of said lands under said instrument will amount to many thousands of dollars more than a liberal *quantum meruit* for any professional services rendered or to be rendered by O'Brien as attorney in connection with the premises. This overplus beyond a liberal *quantum meruit* for his services rendred or to be rendered by O'Brien is tantamount to a gift without consideration from Bolles, the client, to O'Brien, his attorney. And under all the circumstances of the case in the absence of that full and free dis-

closure by O'Brien to Bolles of the entire meaning and legal effect of said instrument, I think that Bolles should be permitted to abrogate and repudiate the said instrument that carries to the attorney so large a share of advantage. Hunter v. Atkins, 3 Myl. & K. (10 Eng. Chy.) *113.