TORBERT, Chief Justice.
This suit began as an action by appellees to quiet title to certain real property in Mobile County. Appellants intervened in the action and asserted a counterclaim against appellees demanding that title be vested in them. Appellants further sought damages for misrepresentation or nondisclosure and an accounting for rents and income. The trial court heard the evidence ore tenus and quieted title in the appellees. Appellants appeal only the portion of the trial court’s order denying the relief sought in the counterclaim.
This appeal revolves around the validity of certain deeds executed by George Jacobs to appellees Sam W. Pipes, III and Augustine Meaher, Jr. Appellants are the heirs of George Jacobs who died intestate in 1955. The property in question is Lot 7 of the John Chastang tract, which lot is divided into three parcels. There are various other heirs and fractional interests involved; however, it is only necessary for us to consider the interest of George Jacobs.[1]
Jacobs executed three deeds with respect to the property. At the time of the conveyances Jacobs’ actual interest was unknown; as it turned out, he owned a Vi2 interest in the tract.
The first deed was executed on March 24, 1944, and purported to convey an undivided lh interest in the tract to appellee Pipes. Pipes had performed legal services for Jacobs some six months to a year prior to the execution of the deed which Pipes accepted when it became apparent that there was no other way to receive payment for the services performed. Pipes testified that he could not recall the amount of the fee involved and that he placed no value on the interest being conveyed but simply agreed to cancel the bill in return for the deed.
Subsequently, Jacobs attempted to sell Pipes the other V2 interest in the tract, and upon his rejection, Jacobs executed and delivered a deed dated June 2, 1947 purporting to convey the entire interest to appellee Meaher. The third deed was executed by Jacobs to Meaher on February 18,1949, and was in the nature of a correction deed.
Appellants contend that since Pipes represented Jacobs, a confidential relation existed between the parties which created a presumption of undue influence concerning the conveyance of the property. Appellants maintain that undue influence gives rise to a constructive trust in favor of appellants as heirs of Jacobs and legal title should be vested in them. Furthermore, as beneficiaries of this constructive trust, appellants claim that they are entitled to an accounting from appellees.
During the time a confidential relationship exists between attorney and client, there must be no abuse of the confidence whereby an attorney secures an unjust advantage over the client. Scott v. Hardyman, 218 Ala. 515, 119 So. 224 (1928); Kidd v. Williams, 132 Ala. 140, 31 So. 458 (1901). However, after the relationship has ceased, the attorney is entitled to accept what may be offered as compensation for his services. Kidd v. Williams, supra; Lecatt v. Sallee, 3 Port. 115 (Ala.1836). In such a situation, it is not necessary that the attorney show that the client obtained independent advice though such a showing would clearly rebut *263 the presumption of undue influence. Scott v. Hardyman, supra. Instead, the transaction will be upheld if it is shown that the client was competent and knowingly and voluntarily settled his account in an arm’s-length transaction with the attorney. Id.; Kidd v. Williams, supra. This result would obtain as well while the relationship still exists. “All that is necessary is, for the client to be placed in such a position as would enable him ‘to perform' an entirely free and unfettered judgment, indepéndent altogether of any sort of control.’ ” 132 Ala. at 144, 31 So. at 459.
In the instant case, the trial court determined that there was no undue influence and that Jacobs was not suffering from any incapacity. We have reviewed the record and find ample evidence to support the trial court’s findings.
Pipes represented Jacobs on one occasion only. There was no longstanding relationship existing over a period of years, and the relationship of attorney-client had terminated some six months to a year prior to the execution of the deed. Any influence which Pipes had over Jacobs by way of the confidence reposed in him as an attorney had ceased to exist long before the conveyance. Moreover, evidence was adduced that Jacobs, not Pipes, initiated the transaction, and Pipes was reluctant to accept the property and only did so when it appeared that it was the only way to settle Jacobs’ account. Pipes testified:
Q. And you still went ahead and made the purchase — ?
A. I couldn’t get George [Jacobs] to pay me any other way. He asked me to do it and I finally agreed to do it.
Q. Okay, you are talking about your fee; am I correct?
A. Right.
Although there was some evidence that Jacobs may not have been able to read or write, there was evidence that Jacobs was experienced in business matters and often engaged in business deals, including the cutting of timber on various properties. Furthermore, it appears that Jacobs knowingly and at arm’s length entered into the transaction in question:
Q. Mr. Pipes, I would like to ask you ■ whether George Jacobs had ever talked to other lawyers before he talked to you about his problem you spoke of.
A. Yes.
Q. Tell us about that.
A. George, uh, as I said sold land and, uh, when he wanted to deed me this property to settle that lawsuit, sort of pay my legal fees sort of — to pay me half interest in it. I told him , that I didn’t want it because of the— he would have to file a bill to quiet title and George said he knew that, that he had been to the Title Insurance Company and that he had been advised that he didn’t have good title and he would have to file a bill to quiet title to get it and he wasn’t interested in it.
Q. Had he been to a lawyer, too?
A. He had been to several lawyers to try to sell it. To sell his interest or to try to get them to agree his title was good.
Therefore, we find that the evidence supported the trial court’s ruling that Pipes did not abuse the confidence reposed in him as an attorney and that Jacobs voluntarily, knowingly, and advisedly conveyed the property to him in an arm’s-length transaction. Thus, the conveyance to Pipes was valid and appellants have no claim to the property, since their ancestor divested himself of his interest by the conveyances to appellees. The only standing appellants have to assert a claim to the property is derived through Jacobs by virtue of their being his heirs.
We note that appellees contend that they have perfected title by prescription, and the trial court so found. However, it is unnecessary for us to consider this issue, since Jacobs validly conveyed his title to appel-lees and they thereby acquired whatever interest he had. Also, certain preliminary motions were made by the parties; however, it is unnecessary for us to rule on them in view of the underlying decision on the merits.
*264 For the foregoing reasons, the order of the trial court quieting title to the property in appellees is due to be affirmed.
AFFIRMED.
BLOODWORTH, FAULKNER, ALMON and EMBRY, JJ., concur.

. Appellees call to our attention that appellants have attempted to add additional land to the litigation not made the subject of appellees’ bill to quiet title and to which appellees make no claim.