GILMER, J-,
delivered the opinion of the court.
In 1828, Meriel H. C. Colley, being then a single woman, and having an infant son, named Charles Lorenzo, and having contracted marriage with one Wm. Boyer, conveyed to Charles C. Mitchell, as trustee, a tract of land and certain slaves, in trust, for the sole and separate use of her, the said Meriel H. C. Colley, during her life, and the profits thereof to be applied to her sole and separate use, and the support, maintenance and education of her only child, the said Charles Lorenzo, and any other child or children she might thereafter have, at her discretion, free from the direction and control of her said intended husband. Boyer died soon *after the marriage, and the said Meriel after-wards married one Apperson, by whom she had two children, Elizabeth Ann and Sarah E. Apperson, who were infants when the decree in this court ‘'was rendered in the Circuit Court. Mitchell continued to act as trustee for some time, when he was removed by an order of the County Court of Hanover, and Michael R. Jones appointed in his stead. He was removed by an order of said court, and Wm. W. Anderson appointed in his stead; and he was succeeded by George W. Doswell, the present trustee. While Mitchell acted as trustee, the profits of the trust property were sufficient for the support of the said Meriel and her children, and there was a balance found in the hands of said Jones as trustee of $289, arising-from the price of a slave embraced in the said deed of trust, who had been condemned for felony and executed.
Anderson was a merchant, and during the trusteeship of Mitchell, the said Meriel commenced dealing in his store, and continued to do so until after his appointment as trustee, and contracted a considerable debt. She also contracted a debt with William Bagby, who was also a merchant; and Dr. George Eleming raised an account against the trust fund, for medical services rendered the trust slaves and the beneficiaries. These three last named persons united in a bill in equity in the County Court of Hanover, to which the said Meriel and her children, the said Jones and Doswell, the trustee, were made defendants.
It is alleged in the bill, that the profits of the trust property are insufficient to support the said Meriel and her children, and to pay the said debts; and the prayer of the bill is, that so much of the trust property as may be necessary for that purpose be sold, or that for so much as the said Meriel may have bound herself,, her life estate in said property may be subjected. The trustee Doswell and the beneficiaries answered, contesting the right of the plaintiffs to recover; and the cause was removed to the Circuit Court of Hanover. *Mr. John Page, an attorney of that court, filed a petition in the cause, setting forth that he had been counsel for the trustee and beneficiaries, and praying that a fee of fifty dollars might be allowed him out of the proceeds of any property that might be sold. An account had been directed in the countj- Court, and the commissioner made a report, and the cause coming on to be heard-in the Circuit Court, the report of the commissioner was confirmed, and the court made a decree directing a sale of a sufficient number of the trust slaves to pay the debts of the plaintiffs, and of the petitioner, Page. Erom this decree, the trustee Doswell appealed.
The first inquiry to be made is, what are the duties of a trustee in a case like this? He seems to occupy very much the position of a guardian. “It is his duty to use the property conveyed to him in trust for those purposes, and those only, which were contemplated by the grantor; to account for and protect the property while the trust continues; to restore it to the parties when the trust is at an end, and not to avail himself of his fiduciary 'character for any object of personal benefit.” Adams’s Equity, 55. This is a brief outline of some of the most important duties of a trustee, almost every one of which Anderson, the *521 trustee in this case, has violated. It has been the wise policy of the courts, to keep fiduciaries of every kind as disinterested as possible, to avoid any antagonism between their duty" and their interest; for when they are placed in opposite scales, we need no law books to teach us which will preponderate. But this trustee pursued a course, from the first, in violation of this salutary and fundamental rule, and, as might be expected, he is now found, not aiding in the defence of the beneficiaries, but attempting to subject a portion of the trust property' to the payment of debts contracted by Mrs. Apperson in a course of extravagance permitted, if not encouraged, by him, seeking to take advantage of his own wrong, and to profit by a violation of the trust and confidence reposed in him. His duty was plain; he should have ^limited the expenditures to the profits of the estate; and if they proved insufficient for the purposes of the trust, either he, or the beneficiaries, might have invoked the aid of a court of equity. The judge of the Circuit Court seems to have been of opinion, that the trust property was liable to be sold during the life of Mrs. Apperson, for the payment of her debts. In this opinion I cannot concur, either on reason or authority'. The property was conveyed in trust, for the joint support, maintenance and education of the grantor, Mrs. Apperson and her children ; and so long as the deed remains un-impeached, it would be wholly inconsistent with its provisions to sell, to pay the debts of one of the beneficiaries, the entire property. Hughes v. Pledge, 1 Leigh, 443; Munday v. Vawter, 3 Grat. 525.
The debt of Anderson before 1341, and the debt of Bagby, were both contracted with Mrs. Apperson alone; and the debt of Jones stands upon the same footing. We are not informed with whom Mr. Page, the petitioner, contracted; but however that may be, I think he cannot recover in this suit upon his petition, in the present condition of the trust fund. The money in the hands of Jones, and now in the hands of Saunders, his administrator, being the price of one of the trust slaves, executed as aforesaid, stands in place of the slave, and must be regarded as a part of the trust property; and I am of opinion, that the Circuit Court erred in decreeing that Saunders, administrator of Jones, should retain, out of that money, the sum of $137 22.
With regard to the account of Dr. Fleming, that stands on a different footing. It seems to be a reasonable one. The services were rendered to the beneficiaries and the trust slaves, and, no doubt, were necessary for their preservation. There was no improper dealing between him and any of the beneficiaries. When a physician is called on to visit the sick, humanity, and often urgent necessity', require his immediate attendance. He cannot stop to enquire from whence his pay is to come, or to bargain with a trustee; and concurring, as *we all cordially do, in the decision of the Court of Appeals, in the case of Markham v. Guerrant & Watkins, 4 Leigh, 279, I am of opinion, that this account, on the authority of that case, should be paid, even if it should be necessary to sell a portion of the trust property for the purpose.
Sound policy requires, that property conveyed in trust for infant beneficiaries, should be protected and preserved for their maintenance and education, and persons who seek to charge such property with the payment of their debts, must look to the deed — and in this case to the profits of the estate for reimbursement, and must deal with the trustee. They cannot be allowed to fake advantage of the improvidence or extravagance of an adult beneficiary, and to make that the means of stripping the infants of their property.
For the reasons set forth in the foregoing opinion, this court is of opinion that the decree of the Circuit Court, in holding that the trust property might be sold for the life-time of Mrs. Apperson to satisfy the demand of the appellee, Anderson, that accrued upon dealings before he became trustee, as well as upon dealings after the date of his appointment, and the claim of the appellee, Bagby, for like dealings, and in ordering a sale for the satisfaction of the fee of the counsel, Page, who was not a party, but came in by petition, and for decreeing against Saunders, administrator of Jones, for only the residue in his hands of the price of the condemned slave, after allowing him to retain a debt of his intestate not properly chargeable upon the principal of the trust fund, is erroneous, and therefore doth decree and order, that the same be reversed and annulled, and that the appellees do pay to the appellant his costs by him expended in the prosecution of his appeal here.
And this court, proceeding to render such decree as the Circuit Court should have rendered, it is adjudged, ordered and decreed, that the bill, as to the plaintiffs Anderson and Bagby, be dismissed, and that they pay to the defendants their costs by them expended in their ‘^defence in the Circuit Court; that the defendant Saunders, administrator of Jones, do, out of the assets of his intestate in his hands to be administered, pay unto the present trustee, Doswell, the sum of $200, with legal interest from the 11th May, 1839, till paid, and that the said Doswell do, out of the said sum, when collected, pay to the plaintiff Fleming the sum of $173 50, with interest from the 31st day of December, 1835, till paid; but, as between the plaintiff Fleming and the defendants in the court below, the parties, plaintiffs and defendants, pay their own costs.