## W. E. Hadley, Appellee, v. Union Trust and Savings Bank, Appellant.

1. CORPORATIONS—*power of vice president to employ agents.* A vice president of a corporation, as such, has no authority to employ agents except to the extent that such authority has been either expressly or impliedly conferred upon him, and the burden of proof is upon him who claims to have been so employed to show that the vice president had authority to employ him.

2. CORPORATIONS—*extent of vice president's authority to modify contract by president for services of attorneys.* Where the president of a corporation made a contract with two attorneys to conduct certain litigation for a certain fee and one of such attorneys sought to recover a larger amount under an alleged modification of the contract by the vice president, the court should be able to say that the corporation had in some manner authorized its vice president to set aside the contract made by its president before it would be justified in finding for plaintiff.

3. CORPORATIONS—*power of officers to modify or rescind contracts.* As a general rule the power to modify or rescind a corporate contract is in the board of directors and no other officer or agent can make such modification.

4. CORPORATIONS—*insufficiency of evidence to show power of vice president to modify contract with corporation's attorneys.* The fact that the vice president of a corporation inquired on several occasions of an attorney conducting a suit for it as to the progress of the suit is wholly insufficient to show that he had authority to set aside the original contract for services made between the corporation, through its president, and the attorney.

5. CORPORATIONS—*nonliability on contract by vice president for employment of attorneys.* Where a corporation contracted with two attorneys to pay them jointly a certain fee for the conduct of a

suit, no part of such fee could be recovered in a suit by one of such attorneys upon a modified contract alleged to have been made between him and the vice president of the corporation, who was not shown to have had authority to make such modification.

Appeal from the City Court of East St. Louis; the Hon. M. R. SULLIVAN, Judge, presiding. Heard in this court at the March term, 1922. Reversed and judgment here for $10. Opinion filed September 23, 1922.

P. K. JOHNSON and D. D. CURRIE, for appellant.

BARTHEL, FARMER & KLINGEL, for appellee.

MR. JUSTICE BOGGS delivered the opinion of the court.

Appellee sued appellant to recover a solicitor's fee for the foreclosure of a mortgage and upon a trial before the court without a jury recovered a judgment for $2,510, the $10 being for costs advanced in the Supreme Court in the foreclosure suit.

The record shows that Judge Keefe represented appellant in its foreclosure suit against John C. Hall et al., which was before this court in 202 Ill. App. 578. The case was reversed for want of necessary parties, and because the court allowed a solicitor's fee of $3,000 when the solicitor was a director of appellant corporation, and no resolution of the corporation to pay for his services had been adopted. After the cause was reversed, August Schlafly, president of appellant, informed appellee that Judge Keefe was to have nothing more to do with the case; that Mr. Connett of St. Louis had been elected counsel for the bank and would have charge of the case, but they wanted appellee to go ahead with him in the case and the bank would pay $500 attorney's fees, but if the court should allow any additional amount and the bank collected it, then the said Connett and appellee would have that fee and appellee said that would be all right.

That such was the original contract as to the employment of appellee is conceded by counsel for both

parties. It is undisputed that appellee accepted that contract and performed services thereunder until the evidence was practically closed before the master in chancery. In the foreclosure suit appellee did not ask the court to allow a solicitor's fee to be taxed as costs and none was allowed or collected by appellant.

Appellee did not sue to recover under the said original contract of employment, but recovered a judgment on the theory that during the pendency of the foreclosure suit he made a new contract with appellant under the terms of which he was to be paid a reasonable fee for his services. He admits that he did not make any new contract with August Schlafly, president of appellant, and with whom he had made the original contract. Neither August Schlafly nor Mr. Connett, general counsel for appellant, knew that appellee claimed to have made a new contract as to fees with anyone until after the final termination of the foreclosure suit.

The evidence discloses that Paul Schlafly was vice president of appellant. He is a son of August Schlafly, who was president at the time the original contract was made and also at the time appellee claims to have made the new contract with Paul Schlafly.

Appellee's version as to the making of the new contract is substantially as follows: After he had put in the evidence on behalf of his client and the defendants in the foreclosure suit had offered in evidence a certain contract which made it appear that the defendants might try to set up a claim of usury, he sent for Paul Schlafly and when the latter came to his office he said to him: "Now, Paul, we are trying this case, and it has been up to the Appellate Court once, and it is going again; they will take this case up. When we went into this case the bank said they would give Mr. Connett and I a $500 fee. Mr. Connett was elected counsel for the bank. I assumed he was chief counsel and would do the work, and I would sort of trail

around with him and advise him, but had no idea that I was going to be called on to do all the work and assume all the responsibility in this case, and I want to go over the matter with you, and say I am not going to do that. * * * Mr. Connett is not doing a thing. * * * I prepared all the papers, attended the hearings and looked after the case. * * * I wouldn't assume to do all the work and assume all the responsibility as I have been doing if I got the entire $500.''

He says he further stated to Paul Schlafly: ''I think it is dangerous for us to ask the court to allow attorney's fees in this case. The court allowed Judge Keefe $3,500, and it was reversed because he was a director and stockholder of the bank. Judge Keefe is still a director and stockholder and I am his partner. * * * I am doubtful whether the court would sustain a fee under these conditions. The state of the pleadings is such that I am not worrying about getting a decree for the $50,000. * * * But I think it is dangerous to get the case in such shape that it might be reversed and sent back and the pleadings changed. This was on account of the difference between $30,000 that the bank paid for the note and $50,000, the face value. If there is a reversal of this case they will ask to file amended pleadings.''

He says he then said to Paul: ''I am willing to go ahead on this case on one condition, and that is if the bank will pay me a reasonable fee for the services I render. Mr. Connett isn't doing anything, and I will withdraw from the case before I will go ahead,'' and that Paul replied: ''Well, now, Judge, that is all right. I don't want you to get out of the case, Judge. The bank isn't a short sport, Judge, and whatever you're worth we will gladly pay, and go ahead.''

Paul Schlafly positively denied that such a conversation occurred. On cross-examination he said he did not remember and could not recall such a conversation and added: ''He did not tell me that. I would say that conversation was not detailed to me.''

Appellee made the original contract with appellant through its president, August Schlafly, and had partly performed it at the time he claims to have made a new contract with the vice president of appellant. A vice president as such has no authority to employ agents except to the extent that such authority has been either expressly or impliedly conferred upon him, and the burden of proof is upon a person who claims to have been so employed to show that the vice president had authority to employ him. 14a Corpus Juris 430.

Before appellant should be required to pay appellee $2,000 more than it had agreed to pay both attorneys in the first instance, the court should be able to say that appellant had in some manner authorized its vice president to set aside the contract made by its president.

We find no evidence in the record that tends to show that he had such authority, express or implied, or that he had authority to employ agents or attorneys. As a general rule the power to modify or rescind a corporate contract is in the board of directors and no other officer or agent can make such modification. 14a Corpus Juris 426.

So far as the record shows, August Schlafly, president of appellant with whom appellee made the original contract, may have been in the bank at the very instant appellee claims to have made the new contract with the vice president. The fact that Paul Schlafly had previously inquired of appellee on several occasions as to the progress of the suit is wholly insufficient to show that he had the necessary authority to set aside the original contract. He had no authority by virtue of his office to alter the terms of the contract made by appellant with appellee. *Scott v. New York Filling Co.*, 79 N. J. L. 231, 75 Atl. 772. In that case a firm of attorneys wrote a letter offering to handle certain litigation on either of two propositions. The client, a corporation, authorized them to go ahead

without stating which proposition was accepted. The attorneys proceeded, and later found it was going to take much more time than was expected. They so reported to the secretary of the company and told him they would expect to be paid what their services were reasonably worth. This was assented to by the secretary. In a suit to recover compensation they claimed that the original offers were superseded by the verbal contract made with the secretary.

The court said: "We think this contention cannot be supported. The secretary had no authority by virtue of his office to alter the terms of the contract made by his company. So far as the proofs show no special authority was conferred upon him by the company for this purpose. Nor do the proofs show any knowledge on the part of the company, or its board of directors, that the secretary had attempted to make any alteration, and, consequently, no ratification by the company of this action on the part of their secretary can be implied."

In *Lecatt v. Sallee*, 3 Port. 115, the Supreme Court of Alabama held that: "An agreement made by a client with his counsel after the latter has been employed in a particular business, by which the original contract is varied, and greater compensation is secured to the counsel than may have been agreed upon, when he was first retained, is invalid and cannot be enforced." That case was cited with approval by our Supreme Court in *Elmore v. Johnson*, 143 Ill. 513-534, and by the Appellate Court of the First District in *Miller v. Lloyd*, 181 Ill. App. 230-244.

We are of the opinion that under the law and the evidence appellee was not entitled to recover on the alleged new contract with the vice president of appellant. Apparently the $500 which was to be paid under the original contract is payable to appellee and Mr. Connett jointly and no part of it can be recovered by appellee in this suit.

The judgment is reversed without remanding at the costs of appellee and judgment is entered here in favor of appellee and against appellant for $10.

*Reversed and judgment here for $10.*

To be incorporated in the judgment of reversal: The court finds that the contract under which appellee rendered the services sued for was a contract by which appellant agreed to pay appellee and W. C. Connett $500 for their services in a certain foreclosure suit, but if the court should allow any additional amount for attorneys' fees as costs and appellant collected it, then said Connett and appellee should have the amount so collected. No such fee was allowed or collected.